LUZ, EDUARDO, DELIA and LUZ MARÍA ALVAREZ, Plaintiffs and Appellants, *v.* MARÍA TERESA, CEFERINA, known as JOSEFINA, CARMEN LUZ ÁLVAREZ and NARCISO ÁLVAREZ NIEVES, Defendants and Appellees.

No. 11119. Argued July 6, 1954.—Decided January 28, 1955.

864

*Pablo Andino* and *Ángel Roberto Díaz* for appellants. *Félix Ochoteco, Jr.* and *José R. Fournier* for appellees.

MR. JUSTICE SIFRE delivered the opinion of the Court.

Plaintiffs brought this suit in the former District Court of Puerto Rico, San Juan Section—later transferred to the Bayamón Part of the Superior Court—alleging in their complaint three causes of action: *first*, to declare that the defendants are the natural children of Félix Álvarez Santana; *second*, that it be decided that one-half of the property described in the complaint belongs to plaintiffs as sole heirs of their mother, Victoria Álvarez, because it was acquired by plaintiffs' parents, in equal parts, through the labor and earnings of both, while living in concubinage; and *third*, to order the division of the common ownership of the real property by public sale and proportional distribution of the proceeds. The defendants answered opposing plaintiffs' claims. A pretrial conference was held and the case was subsequently heard on its merits. Judgment was rendered partly for plaintiffs, as to the first cause of action, and adverse as to the others. They appealed and assigned three errors.

It is alleged in the first assignment that the court erred in holding that appellants were the natural children of Félix Álvarez Santana, "but for the sole purpose of bearing his surname..."

In the first cause of action—of filiation—in which the court made a partly adverse pronouncement, appellants alleged that they are the children of the said Félix Álvarez, "born while he was living in concubinage with Victoria Álvarez," one in 1922, another in 1924, and the others in 1927,

and prayed that judgment be rendered acknowledging their condition or status of natural children.

The appellees admitted at the pretrial conference that appellants were in fact the children of the said Félix Álvarez, but stating, however, that "it is up to the court to determine on the evidence the classification of such children, whether natural, legitimate, or adulterine..." [1]

The judgment is based on a number of conclusions reached by the court to the effect that appellants were the children of Álvarez Santana, "born while living in concubinage with Victoria Álvarez and while he was married to Obdulia Álvarez," and that "by reason of the legislation in force on the date of their respective births, and since they were conceived and born while their father...was married to another woman..., they are merely natural children..., but for the sole purpose of bearing his surnane but not of inheriting from him." Act No. 229 of May 12, 1942 (Sess. Laws, p. 1296), as amended by Act No. 243 of May 12, 1945 (Sess. Laws, p. 814); *Vargas* v. *Jusino*, 71 P.R.R. 362.

Section 2 of the act mentioned in these conclusions provides in part as follows: "Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, *may be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom...* In case the children referred to in this section are not recognized by the voluntary action of their parents, and in default of the latter by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents... *It being understood, however, that such a recognition shall only have the scope herein expressed.*" (Italics ours.)

---

[1] The appellees were sued as heirs of Félix Alvarez Santana.

Appellants contend, as we have seen, that the court erred in rendering judgment acknowledging the right to bear their father's surname but not the right to inherit from him, which contention is based on the admission of the appellees, both at the pretrial conference and at the trial, that appellants were the children of Álvarez Santana, which in their opinion is tantamount to the voluntary recognition of their status or condition of natural children, "for all legal purposes", referred to in § 2 of Act No. 229 of 1942, as amended by Act No. 243 of 1945.

We cannot share this view which, in our opinion, is manifestly erroneous. When appellees admitted that their adversaries were the children of Félix Álvarez, they merely relieved plaintiffs from the burden of proving it at the trial. The fact that it was established by an admission does not entail a different consequence from that which would have arisen if appellants had been required to prove it by proper evidence, and that consequence could be none other than the acknowledgment of their right to bear his surname, pursuant to the provisions of the Act, since they were born prior to its effectiveness, at which time they lacked "the condition of natural children, according to prior legislation." [2] The sole purpose of that admission, as already stated, was to avoid the introduction of evidence on an essential fact to support the first cause of action, and which was meant to obtain the only thing available to appellants under the law.

We need not discuss whether or not the record of the pretrial conference is a public document, or the means for establishing the existence of voluntary recognition mentioned in Act No. 229, as amended, for in the case at bar the voluntary action of recognizing the appellants as children of Álvarez Santana, for all legal purposes, is entirely lacking.

Appellants contend that the pretrial conference was held at the instance of the appellees, and that the latter,

---

[2] Section 125 of the Civil Code, 1930 ed.

forced heirs of Álvarez Santana, "of their own volition, freely and spontaneously admitted that the plaintiffs-appellees were the children of the same father..., that is, they voluntarily admitted the paternity...thereby making a voluntary acknowledgment," adding that "there was no controversy as to the action of filiation. On the contrary, plaintiffs-appellants were recognized by voluntary action, thereby expressly complying with Act No. 229 of May 12, 1942..., as amended by Act No. 243 of May 12, 1945..."

The appellees had a perfect right to request a conference. Moreover, it was the duty of the attorney for the appellees to request one if in his opinion the issues could be simplified thereby and the presentation of evidence avoided as to one or more matters involved in the litigation; and it cannot be inferred from that fact that the action of the attorney was motivated by purposes alien to those of Rule 16 of the Rules of Civil Procedure, or to bring about consequences other than those resulting normally and which may be anticipated from that proceeding. After the conference was held, it was the duty of the attorney to cooperate in order that the said Rule might serve its purposes, and without doubt the attorney for the appellee would have been reprehensibly obstinate if, knowing that appellants were the children of Álvarez Santana, he had refused to admit it, compelling them to offer evidence at the trial in support thereof. The pretrial conference is not likely to succeed without the hearty and decided co-operation of the bench and the bar, and the authorities stress the importance of that cooperation. In this connection, the Supreme Court of Wisconsin expressed its opinion in *Klitzke* v. *Herm*, 242 Wis. 456, 8 N.W. 2d 400, as follows: "There is general agreement that in order to accomplish the purpose of pretrial procedure and make it serve a useful purpose in the process of adjudication, there must be a spirit of co-operation between the court and the lawyers representing litigants... While a...judge carries a heavy

responsibility, it must not be overlooked that attorneys... are almost always equally responsible for the results of a pretrial conference... If attorneys by their belligerency, stubbornness, or contumaciousness obstruct the course of the judicial process, they must in the end expect to bear the consequences of their misconduct." Such co-operation could hardly be attained if the procedure at the pretrial conference is corrupted, thereby converting it into a procedure full of surprises and dangers.

At the time the admission was made, the attorney for the appellees complied with his duty to facilitate the judicial procedure, giving the appellants the benefit of relieving them from the necessity of proving the admitted fact. No reasoning whatever can lead us to the conclusion that that admission has the scope attributed by appellants. To hold otherwise would be tantamount to encouraging the lack of honesty at pretrial conferences and to sanctioning dilatory tactics and attitudes at variance with their purpose, and such means, of recognized value in the simplification of judicial controversies, would suffer a severe blow with highly prejudicial consequences to their efficacy.

If there were any need for greater demonstration that the admission cannot be given the interpretation placed by appellants—and there is no need for so doing—such demonstration might be found in the statements which limited the scope of such admission.

■ Appellants invoke the provisions of § 1 of Art. II of the Constitution of the Commonwealth of Puerto Rico. They do not apply to the case at bar since said appellants were born before the Constitution went into effect.[3]

■■ The second assignment alleges that the trial court erred in dismissing the second cause of action. It was therein

---

[3] Section 1 of Art. II of the Constitution of the Commonwealth of Puerto Rico reads as follows:

"Section 1.—The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious

alleged that Félix Álvarez Santana and Victoria Álvarez, "while living in concubinage, and with the fruits of their labor and earnings derived from hard work, economy, and privations, purchased for both of them the property described in the said cause of action," and claimed one-half of the property in their capacity as heirs of the said Victoria Álvarez.

The court reached the following conclusions and, on the strength thereof, dismissed the cause of action: "3. That the real property described in the first cause of action of the complaint was acquired by purchase exclusively by Félix Álvarez Santana while he was married to Obdulia Álvarez." "4. That Félix Álvarez Santana acquired the said real property by purchase with his own money, and that plaintiffs' predecessor in interest did not contribute any amount of money, earned from her labor and economy, for the purchase of the said real property, wherefore she never had any interest or participation therein."

The foregoing conclusions are fully supported by the evidence, and we should not disturb the judgment rendered for the reason adduced.

Nor do we agree with appellants in maintaining in the third assignment that the court erred in dismissing the third cause of action, praying for an order to divide the community of property allegedly existing between Álvarez Santana and Victoria Álvarez, by the sale of the property and proportional distribution of the proceeds thereof. The result reached by the court as to that cause of action was a logical consequence of the dismissal of the second count.

The judgment appealed from will be affirmed.

Mr. Justice Belaval concurs in the result.

---

ideas. Both the laws and the system of public education shall embody these principles of essential human equality."

As stated in the Report on the Bill of Rights Committee submitted on December 14, 1951 to the Constituent Convention, the provisions of § 1 of Art. II of the Constitution, "For the purposes of inheritance and property, the changes resulting from this section shall not be retroactive

to births occurring prior to its effectiveness."
 Act No. 17, approved August 20, 1952, "To Establish the Equality of Rights of Children," had retroactive effect to July 25 of that year.